**IN THE COURT OF APPEALS OF IOWA**

No. 25-1091
Filed December 3, 2025

**IN THE INTEREST OF A.W.,**
**Minor Child,**

**R.W., Father,**
　　　Appellant.

_____

Appeal from the Iowa District Court for Calhoun County, Joseph B. McCarville, Judge.

A father appeals from a permanency review order placing his son with out-of-state relatives, anticipating the establishment of a guardianship. **AFFIRMED.**

Brandy R. Lundy of Lundy Law, PLC, Moorland, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Mary Lauver, Lake City, attorney and guardian ad litem for minor child.

Considered without oral argument by Greer, P.J., Schumacher, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**VOGEL, Senior Judge.**

A father appeals from a permanency review order placing his son with out-of-state relatives under Iowa Code section 232D.201(2) (2023),[1] prior to establishing a guardianship with those relatives. Upon our review, we affirm.

## I.        Background Facts and Proceedings

In July 2023, the Iowa Department of Health and Human Services removed then eighteen-month-old A.W. from his family's home upon reports of the parents' methamphetamine use, domestic violence, untreated mental-health concerns, and unsanitary living conditions. A.W. was adjudicated as a child in need of assistance (CINA) and placed in the care of his paternal grandmother under the department's protective custody. The parents have a history of department involvement; prior to A.W.'s birth, a separate CINA case ended with a guardianship for their older son being established with a maternal aunt in Minnesota.

In this case, the parents participated minimally in services that were critical to A.W.'s special medical and developmental needs. There was no serious dispute that neither parent could have A.W. returned to their care. The child was initially placed with the paternal grandmother in Iowa. However, the concurrent plan was to place A.W. with the maternal aunt in Minnesota who has guardianship of A.W.'s older sibling. The department's requested home study for the maternal aunt was approved, and the aunt began having visits with A.W.

Following a hearing in March 2025, the court entered a permanency order establishing a guardianship for A.W. with the maternal aunt and her spouse.

---

[1] The mother does not appeal.

Following a permanency review hearing in June, the court entered an order affirming its prior order with some modification to assist the Minnesota relatives in obtaining needed services for A.W. The father appeals.

**II.     Standard of Review**

We review permanency orders de novo. *See In re D.M.*, 965 N.W.2d 475, 479–80 (Iowa 2021). "In doing so, we give the juvenile court's factual findings weight, but we are not bound by them. Our 'paramount consideration' is protecting the child's best interests." *Id*. at 479–80 (citations omitted).

**III.     Right to Appeal**

Preliminarily, the State claims the father failed to preserve error on his challenge because he did not appeal the court's March 11, 2025 permanency order that directed a guardianship with the maternal aunt and her spouse be established. *See* Iowa Rs. App. P. 6.101(1)(a) ("A notice of appeal from a final order or judgment entered in Iowa Code chapter 232 termination of parental rights or child in need of assistance proceedings must be filed in the district court and an informational copy with the supreme court within 15 days after the filing of the order or judgment."); 6.102(1)(a) (noting appeals in CINA proceedings must be taken from a final order). According to the State, because the father instead appealed the court's June 26, 2025 order, "which only affirm[ed] the court's prior order to establish a guardianship," "this issue is moot." Specifically, the State maintains that the "fifteen-day window for appeal of the permanency decision for guardianship with the aunt closed on March 26, 2025."

Based on the totality of the language in the March 11 order,[2] it could be considered a final order appealable as a matter of right.[3] The order states, in part:

> **2. Permanency Order:** Pursuant to Iowa Code Section 232.104(2)(d)([2]):
> (d)([2]), the Court transfers guardianship and custody of the child to [the maternal aunt and her spouse].
> **The Calhoun County Clerk of Court shall set up a guardianship file pursuant to Iowa Code Section 232D to facilitate the establishment of this guardianship.**
> **The guardianship will be finalized on June 6, 2025. Between now and then HHS shall facilitate contact between [the maternal aunt and her spouse] and [A.W.] including overnight visitation so that the guardians and [A.W.] can become acquainted.**

The order further states, "**A permanency review/modification hearing shall be held on June 6, 2025, at 8:30 a.m. It is intended that this will be a review of the file and not an actual hearing.**"

However, our analysis takes a turn here under these particular facts. On May 30, the district court entered an order stating in part, "this matter came before the Court upon review of the file. The hearing set for June 6th is cancelled. A hearing to review this case is set [for June 16, 2025]." At the outset of the June 16 hearing, the court stated,

> In March of 2025, I issued a permanency order finding that [A.W.] should be placed in a guardianship. The order pretty much says that the guardianship shall be established with [the maternal aunt] in Minnesota. What is not put out in the order but was understood by all the parties was that between March and May there would be some significant contact between [A.W.] and [the maternal aunt]. When it came around to May, it didn't appear—it appeared that there had

---

[2] Our record does not include a transcript of the March 7 hearing on which the court entered its order.

[3] *See* Iowa Code § 232.104(9)(a) (allowing for permanency review hearings "[f]ollowing an initial permanency hearing"); *see also In re C.T.*, No. 24-1035, 2024 WL 4620119, at *3 (Iowa Ct. App. Oct. 30, 2024) (addressing an order with similar language).

been some minimal contact. Now, upon reviewing the whole case—so based on that, I started wondering to myself, well, why isn't grandmother . . . .

. . . .

I started wondering, the child has been placed with [the paternal grandmother] the entire time. So I started going back looking through the DHS reports wondering why isn't she the guardian. She wasn't considered as a guardian in March and I noticed on May 21st, 2024, there is a paragraph that says on page six, this is the DHS report, I'm quoting from, "[the paternal grandmother] is appropriate for short term care. However, she is not capable for long term care." This is based on observation and a collaboration of Public Health who has worked with the family since 2017. Apparently, I just took that on face value. I mean, we didn't—I guess maybe that issue wasn't really contested and then on February 28th, 2025 on page 15 it says,

the grandmother has been able to keep [A.W.] conditionally safe in her care with very close supervision from HHS as well as Family Foundations and Mid Iowa. She has required instructions what needs to be in place to keep [A.W.] safe[, including] who can and cannot come and go from the home and if HHS was not involved, the home would not be safe.

Well, again, seems to come out of the blue. So let me do this, the order in March was that guardian will be established with [the maternal aunt] after some visitation taken place. Now I'm starting to second guess that decision. I don't know if we can resolve the issue now, maybe we can. . . .

. . . .

I should also for the report clarify that in March 11th, I issued the permanency order. We set a review hearing for June 6th. June 6th came around and it was set for 8:30, which means I did not intend to have a contested hearing. I thought I would just be signing an order and then I learned that there hadn't been much contact between [A.W.] and [the maternal aunt] and so I cancelled the June 6th hearing and set this one up and that's why we're here today.

Ultimately, after hearing the parties' positions and information on "[w]hat happens with Minnesota services" if the court ordered the guardianship "now" and "closed" the juvenile case, the court determined it was able to "resolve the issue now." The court then stated:

Well, it will be the order and judgment of the Court then that I am going to continue with the March order. I'm going to continue with the permanency plan of placement with [the maternal aunt]. . . .

. . . .

. . . . I will modify the order in the juvenile court for foster care placement with [the maternal aunt and her spouse]. I will set— basically, I will just set a paper review. Nobody needs to log on. There won't be a hearing. I will docket this case. I'll note this case on my schedule for August 1st. I will issue the letters of appointment on August 1st and I will close the juvenile case on August 1st.

The court thereafter entered the June 19 order, which states in relevant part:

**2. Permanency Order:** Pursuant to Iowa Code Section 232.104(2)(d)([2]):

(d)([2]), On August 1, 2025, this case shall to be transferred to a guardianship. [The maternal aunt and her spouse] will be established as [A.W.]'s guardians. The guardianship file in Calhoun County is JGJV500974.

**3. Placement:** Pending the finalization of the guardianship, the custody of [A.W.] is placed with the Iowa Department of Health and Human Services for placement in the foster home of [maternal aunt and her spouse].

Based on this language, the transcript of the June 16 hearing, and the totality of the unique circumstances presented here, we find the June 19 review order to be the final order on this issue, appealable as a matter of right. *See In re V.L.*, No. 18-1223, 2018 WL 6418845, at *3 (Iowa Ct. App. Dec. 5, 2018) (observing juvenile court's order "was not interlocutory because it finally adjudicated V.L.'s guardianship and custody" and finding the appeal "posed no danger of delaying permanency for V.L."). The father's failure to appeal the March order does not preclude his right to appeal the June order. We therefore turn to the merits of the father's appeal.

## IV. Best Interests

The father contends that the court erred in "placing [A.W.] out of state under a guardianship" with the maternal aunt. Following a permanency hearing, the court

may enter an order "transfer[ring] guardianship and custody of the child to an adult relative." Iowa Code § 232.104(2)(d)(2). "Ordinarily, this option is not preferred over the termination of parental rights. But the best interests of a child may warrant exercise of the option." *In re J.R.*, No. 18-1922, 2019 WL 719054, at *2 (Iowa Ct. App. Feb. 20, 2019) (internal citation omitted). Here, the court determined a guardianship to be in A.W.'s best interests. We do not review the court's decision establishing a guardianship; the father agreed he does not have the ability to parent A.W. "on his own" "due to intellectual disabilities," and he requested that a guardianship be established. *See In re K.H.*, No. 07-0338, 2007 WL 1202715, at *3 (Iowa Ct. App. Apr. 25, 2007) (affirming a guardianship with paternal grandparents where "the parents have not demonstrated an ability to protect and nurture the child").

Instead, the father challenges the child's placement, claiming it is in the child's best interests to "remain[] with the paternal grandmother." We focus on the court's review of its decision to place A.W. in the Minnesota relatives' care then establish a guardianship with the same relatives, rather than having A.W. remain with the grandmother, all with the best interests of A.W. in mind.[4] *See id.*

By all accounts, the home study on the maternal aunt's home resulted in a "positive report" and opined the aunt and her spouse are a "good" placement option for A.W. The parents' older child, A.W.'s seven-year-old brother, has been placed

---

[4] At the hearing, the guardian ad litem explained "the best approach" in this case given A.W.'s "special needs" would be to place him in Minnesota with the relatives "but keep the case open" to allow the relatives to "engage in services in Minnesota" before the guardianship was finalized. The maternal aunt agreed the child needed to "be placed as a foster placement at this point" to allow her to "initiate the services quicker" in Minnesota.

in a guardianship with the maternal aunt since 2020.  That child has "significant" health issues requiring medical treatment and highly involved parenting.  A.W. has special needs similar to his brother.  The maternal aunt appeared at the June 16 hearing and confirmed her commitment to establishing A.W.'s therapy and insurance and "everything" in Minnesota as soon as possible.

The guardian ad litem noted in her June 19 report, that although A.W. is bonded with the paternal grandmother, the grandmother "requires a significant amount of support to facilitate the care of [A.W.]" and "there have been a number of time [sic] throughout this case where the child's safety at the grandmother's has been a concern due to the home being a mess and questionable people being in the home."

Ultimately, the court affirmed its prior findings that A.W.'s special needs would overwhelm the grandmother such that she was not a realistic permanency option.  The court then noted, "[The paternal grandmother] has done all that has been asked of her and this Court is grateful to her for stepping up and taking care of [A.W.]  I find however, that going forward it is in [A.W.]'s best long-term interest to be placed with [the maternal aunt and her spouse]."  Following our de novo review, we conclude the placement of A.W. with the aunt and her spouse, anticipating the establishment of a guardianship is in A.W.'s best interests.

**AFFIRMED.**